UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DEMETRIUS DAVIS,

                        Plaintiff,

v.                                             **DECISION AND ORDER**
                                                                23-CV-36S

LISA VIDAL,

                        Defendant.

## I.  INTRODUCTION

In this civil rights action brought under 42 U.S.C. § 1983, Plaintiff Demetrius Davis alleges that Defendant Lisa Vidal, an Erie County probation officer, violated his Fifth and Fourteenth Amendment due process rights by failing to schedule a probation-revocation hearing, resulting in his unlawful and excessive incarceration.

Presently before this Court is Vidal's motion to dismiss Davis's complaint under Rule 12 (b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted and on immunity grounds. (Docket No. 5.)  With briefing fully completed and oral argument deemed unnecessary, this Court will grant Vidal's motion in part and deny it in part.

## II.  BACKGROUND

The following facts, drawn from Davis's complaint, are assumed true for purposes of assessing the motion to dismiss.  See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).

On January 28, 2019, after serving three months in pretrial detention, Davis pleaded guilty in state court to assault, a Class A misdemeanor under New York law, and

was sentenced to serve three years of probation.  See Complaint, Docket No. 1, ¶¶ 5, 6. The Erie County Probation Department assigned Vidal to supervise Davis's probation. Id. ¶¶ 4, 5, 23.

Approximately one year later, on January 15, 2020, Vidal lodged a Declaration of Delinquency against Davis and requested that he be detained.  Id. ¶ 7.  Davis was taken into custody that same day and later arraigned on the Declaration of Delinquency on January 22, 2020, at which time he was remanded to an unidentified "county jail."[1] Id. ¶ 7.  Davis remained in custody for the next 13 months without a court date, until he was released on February 4, 2021, at his own request.  Id. ¶¶ 9-11.  On May 24, 2021, the state court *sua sponte* and *in absentia* terminated Davis's probation and re-sentenced him to time served with no admission of any violation.  Id. ¶ 8.

Davis remained under Vidal's supervision at all times between his January 15, 2020 sentencing through the termination of his probation on May 24, 2021, including while he was in custody.  Id. ¶¶ 8, 9, 13.  Davis alleges that Vidal caused him to unlawfully serve 16 months on his misdemeanor conviction, eight months beyond the lawful maximum sentence.  Id. ¶¶ 10, 12, 14-17.  In particular, Vidal failed to schedule a probation-revocation hearing until after Davis's statutory maximum sentence had expired, despite having actual knowledge of Davis's continuing incarceration.  Id. ¶¶ 18, 21. Vidal further failed to take reasonable and necessary measures to prevent Davis from serving an excessive sentence.  Id.  Davis alleges that Vidal is personally responsible

---

1 Presumably the Erie County Holding Center.

for his incarceration beyond the statutory maximum limits and that she intentionally caused his excessive and continuous incarceration with deliberate indifference to his Fifth and Fourteenth Amendment rights.   Id. ¶¶ 23-25.

Davis instituted this action on January 17, 2023, by filing a complaint in the United States District Court for the Western District of New York.   (Docket No. 1.)   Vidal filed the instant motion to dismiss on February 8, 2023.   (Docket No. 5.)   Davis responded in opposition on February 23, 2023.   Vidal filed a reply memorandum on March 2, 2023.

### III.   DISCUSSION

Vidal asserts three grounds for dismissal of Davis's complaint: (1) the allegations fail to state a claim upon which relief can be granted; (2) Vidal is entitled to absolute immunity; and (3) Vidal is entitled to qualified immunity.   Each ground is discussed in turn.

**A.   Failure to State a Claim**

Vidal moves to dismiss the complaint under Rule 12 (b)(6) of the Federal Rules of Civil Procedure.   Rule 12 (b)(6) allows dismissal of a complaint for "failure to state a claim upon which relief can be granted."   Fed. R. Civ. P. 12 (b)(6).   The rule is "designed to test the legal sufficiency of the complaint, and thus does not require the Court to examine the evidence at issue."   DeJesus v. Sears, Roebuck & Co., 87 F.3d 65, 69 (2d Cir. 1996).   The question, rather, is whether the complaint meets the applicable pleading standards. See Berry v. Tremblay, 9:20-CV-177 (DNH/TWD), 2021 WL 1575951, at *2 (N.D.N.Y. Apr. 22, 2021) ("The [Rule 12 (b)(6)] motion tests the legal sufficiency of the complaint and whether it conforms to Rule 8 (a)(2) of the Federal Rules of Civil Procedure.").

Federal pleading standards are generally not stringent: Rule 8 requires only a short and plain statement of a claim. Fed. R. Civ. P. 8 (a)(2). But the plain statement must "possess enough heft to show that the pleader is entitled to relief." Bell Atl. Corp. v. Twombly, 550 U.S. 554, 557, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). When determining whether a complaint states a claim, the court must construe it liberally, accept all factual allegations as true, and draw all reasonable inferences in the plaintiff's favor. See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). Legal conclusions, however, are not afforded the same presumption of truthfulness. See Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ("the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). Labels, conclusions, or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Facial plausibility exists when the facts alleged allow for a reasonable inference that the defendant is liable for the misconduct charged. Iqbal, 556 U.S. at 678. The plausibility standard is not, however, a probability requirement: the well-pleaded allegations in the complaint need only nudge the claim "across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

A two-pronged approach is thus used to examine the sufficiency of a complaint. This examination is context specific and requires the court to draw on its judicial

4

experience and common sense. See Iqbal, 556 U.S. at 679. First, statements that are not entitled to the presumption of truth, such as conclusory allegations, labels, and legal conclusions, are identified and stripped away. See id. Second, well-pleaded, non-conclusory factual allegations are presumed true and examined to determine whether they "plausibly give rise to an entitlement to relief." Id. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint fails to state a claim. Id.

In considering a motion to dismiss under Rule 12 (b)(6), "a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." Leonard F. v. Isr. Disc. Bank of N.Y., 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks omitted); see also Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004). "[W]here a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect," thereby rendering the document "integral to the complaint." Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006) (citing Chambers v. Time Warner, Inc., 282 F.3d 147, 152–53 (2d Cir. 2002)). But even where a document is "integral" to the complaint, it cannot serve as the basis for dismissal unless there is no dispute as to its authenticity, accuracy, and relevance. See Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006) (internal citations omitted).

Davis alleges a due process claim under the Fifth and Fourteenth Amendments

5

pursuant to 42 U.S.C. § 1983. Civil liability is imposed under 42 U.S.C. § 1983 only upon persons who, acting under color of state law, deprive an individual of rights, privileges, or immunities secured by the Constitution and laws. To properly plead a cause of action under § 1983, a plaintiff's complaint must include allegations that the challenged conduct "(1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." Whalen v. Cty. of Fulton, 126 F.3d 400, 405 (2d Cir. 1997); Hubbard v. J.C. Penney Dep't Store, 05-CV-6042, 2005 WL 1490304, at *1 (W.D.N.Y. June 14, 2005).

The Fourteenth Amendment[2] due process clause provides that "No State shall deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. As relevant here, "[a] procedural due process claim consists of two elements: (i) deprivation by state action of a protected interest in life, liberty, or property, and (ii) inadequate state process." Reed v. Goertz, 598 U.S. 230, 236, 143 S. Ct. 955, 215 L. Ed. 2d 218 (2023) (citation omitted). And as further relevant, a state probationer, like Davis, is entitled to preliminary and final probation-revocation hearings to protect his or her liberty interests. See Gagnon v. Scarpelli, 411 U.S. 778, 782, 93 S. Ct. 1756, 36 L. Ed. 2d 656 (1973); Robinson v. Wright, 5:21-CV-1098 (TJM/ML), 2022 WL 2663369, at *4 (N.D.N.Y. July 11, 2022). At such hearings, various procedural protections apply

---

2 Although Davis purports to bring his due process claim under the Fifth and Fourteenth Amendments, only the Fourteenth Amendment applies, since Davis does not allege that any federal actor violated his constitutional rights. See Robinson v. Wright, 5:21-CV-1098 (TJM/ML), 2022 WL 2663369, at *3 (N.D.N.Y. July 11, 2022) (noting that "[t]he Fifth Amendment Due Process Clause applies only to the federal government, and not to state or municipal governments" and collecting cases). Any claims under the Fifth Amendment are dismissed.

before the decision to revoke probation may be made.  See Black v. Romano, 471 U.S. 606, 611-12, 105 S. Ct. 2254, 85 L. Ed. 2d 636 (1985) (outlining probationer's rights during revocation proceedings).

Here, Davis alleges that Vidal acted under color of state law and was personally involved in the deprivation of his due process rights—the failure to schedule a probation-revocation hearing.  See Complaint, ¶¶ 4, 10, 13, 17-25.  Reading the complaint liberally, as required, Davis alleges that he was at all times under Vidal's supervision, that Vidal knew that he was in custody, and that Vidal knew that he was being held without a probation-revocation hearing.  Id. ¶¶ 8, 10, 13, 18, 21.  He further alleges that Vidal had actual knowledge that his detention was unlawful and without due process yet failed to schedule a probation-revocation hearing or act to end his unlawful detention.  Id. ¶ 21.  Drawing all inferences in Davis's favor, he further alleges that the scheduling of a probation-revocation hearing fell within Vidal's supervisory responsibilities or was within her authority.  Id. ¶¶ 10, 17 (both alleging that no process was afforded Davis due solely to Vidal's actions or omissions); 18, 21 (both alleging that Vidal failed to schedule a probation-revocation hearing).  This is minimally sufficient to state a Fourteenth Amendment due process claim.

Vidal argues that Davis's complaint is deficient because his allegations are conclusory and because there is "no basis for the proposition that a probation officer has control over a judge's hearing calendar, particularly during a pandemic when court operations were largely suspended."  See Memorandum of Law, Docket No. 5-1, p. 12.  As set out above, however, Davis sufficiently pleads non-conclusory facts in support of

7

his claims, and those facts must be accepted as true at this stage, including the allegations that scheduling a probation-revocation hearing fell within Vidal's supervisory responsibilities or was within her authority.   Vidal's motion to dismiss for failure to state a claim must therefore be denied.

**B.     Absolute Immunity**

Absolute immunity may shield state officials from liability for "judicial acts" and "acts that are prosecutorial in nature."   Scotto v. Almenas, 143 F.3d 105, 110 (2d Cir. 1998).  But in § 1983 actions, "the presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties."   Id.   As such, "[a]bsolute immunity is proper only in those rare circumstances where the official is able to demonstrate that the application of absolute immunity to the circumstances presented is required by public policy."   Id. (citing Cleavinger v. Saxner, 474 U.S. 193, 201, 106 S. Ct. 496, 88 L. Ed. 2d 507 (1985)).   For example, "[a] parole official who claims the benefit of absolute immunity bears the burden of showing that public policy requires that it be invoked."   Krebs v. New York State Div. of Parole, No. 9:08-CV-255 (NAM/DEP), 2009 WL 2567779, at *6 (N.D.N.Y. Aug. 17, 2009).

In the Second Circuit, courts take a "functional approach" to determine whether an official should receive absolute or qualified immunity.   Id.   Under this approach, the type of immunity "flows not from rank or title or location within the Government, but from the nature of the official's responsibilities."   Cleavinger, 474 U.S. at 201.   Consequently, "a factual inquiry may be necessary to determine whether a state official's acts were judicial or prosecutorial in nature, entitling her to absolute immunity; or administrative or

8

investigative in nature, entitling her to only qualified immunity." Jackson v. Ramirez, 1:15-CV-617-GHW, 2016 WL 796854, at *4 (S.D.N.Y. Feb. 22, 2016) (citing Stewart v. Lattanzi, 832 F.2d 12, 13 (2d Cir. 1987) (per curiam)).  "[T]he more distant a function is from the judicial process, the less likely absolute immunity will attach." Scotto, 143 F.3d at 111 (quoting Snell v. Tunnell, 920 F.2d 673, 687 (10th Cir. 1990)).

Vidal argues that her actions in determining that Davis violated the terms of his probation and in filing the Declaration of Delinquency against him are discretionary acts that are protected by absolute immunity.  But Davis does not challenge Vidal's initiation of probation-revocation proceedings through the filing of the Declaration of Delinquency. See Affirmation of Marc Shatkin, Esq., Docket No. 8, ¶ 7.  Davis's claim relates to Vidal's failure to initiate a probation-revocation hearing despite knowing that Davis had received no process and was serving an unlawful sentence.  Since Vidal expresses no entitlement to absolute immunity on that claim, her motion to dismiss on absolute immunity grounds will be denied.

C.  **Qualified Immunity**

"Qualified immunity protects public officials from civil liability 'if (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law.'" Coggins v. Buonora, 776 F.3d 108, 114 (2d Cir. 2015) (quoting Salim v. Proulx, 93 F.3d 86, 89 (2d Cir. 1996)); White v. Pauly, 580 U.S. 73, 78-79 137 S. Ct. 548, 196 L Ed. 2d 463 (2017) (per curiam) ("Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have

9

known."). Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson v. Callahan, 555 U.S. 223, 236, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009).

"A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" Mullenix v. Luna, 577 U.S. 7, 11-12, 136 S. Ct. 305, 193 L. Ed. 2d 255 (2015) (per curiam) (quoting Reichle v. Howards, 566 U.S. 658, 132 S. Ct. 2088, 2093, 182 L. Ed. 2d 985 (2012)). Clearly established law should not be defined "at a high level of generality." White, 580 U.S. at 79. Although the caselaw "does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." Id. (alteration omitted) (internal quotation marks omitted).

Vidal argues that she is entitled to qualified immunity because it was not clearly established that a probation officer violates a person's due process rights by not scheduling a probation-revocation hearing. But this argument ignores the Supreme Court's decision in Gagnon, which found that a state probationer is entitled to preliminary and final probation-revocation hearings to protect his or her liberty interests. See Gagnon v. Scarpelli, 411 U.S. 778, 782, 93 S. Ct. 1756, 36 L. Ed. 2d 656 (1973). This is the clearly established right alleged to have been violated in this case: Davis alleges that scheduling his probation-revocation hearing fell within Vidal's supervisory responsibilities or was within her authority and that Vidal nevertheless knowingly denied him the final probation-revocation hearing to which he was entitled. Accepting the

allegations in the complaint as true, this Court finds that Vidal is not entitled to qualified immunity at this stage.  Her motion to dismiss on that basis will therefore be denied.

## IV.   CONCLUSION

Based on the foregoing, this Court finds that Davis's complaint adequately states a Fourteenth Amendment claim, and that Vidal is not entitled to immunity at this stage. The complaint does not, however, state a Fifth Amendment claim.  Vidal's motion to dismiss will therefore be granted in part and denied in part.

## V.   ORDERS

IT HEREBY IS ORDERED, that Defendant's Motion to Dismiss (Docket No. 5) is GRANTED in part and DENIED in part.

FURTHER, that Plaintiff's Fifth Amendment claim is DISMISSED.

SO ORDERED.

Dated:   February 5, 2024
         Buffalo, New York

                                                          s/William M. Skretny
                                                       WILLIAM M. SKRETNY
                                                     United States District Judge

11